John P. RIFAKES, Plaintiff,

v.

CITIZENS UTILITIES COMPANY d/b/a
Citizens Telecom Management
Services, Inc., Defendant.

Civil Action No. 3:95–CV–2814–D.

United States District Court,
N.D. Texas,
Dallas Division.

April 29, 1997.

John Ecker Agnew, Carter, Jones, Magee, Rudberg & Mayes, Dallas, TX, for Plaintiff.

Lawrence J. McNamara, Paul G. Nason, Liddell, Sapp, Zivley, Hill & LaBoon, Dallas, TX, Richard M. Reice, Stamford, CT, for Defendant.

## MEMORANDUM OPINION AND ORDER

FITZWATER, District Judge.

Plaintiff John P. Rifakes ("Rifakes") sues defendant Citizens Utilities Company d/b/a Citizens Telecom Management Services, Inc. ("Citizens") for age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Labor Code Ann. §§ 21.001–21.306 (West 1997). Citizens moves for summary judgment. For the reasons that follow, the court grants the motion.

## I

The court recounts the evidence and inferences favorably to Rifakes as the summary judgment nonmovant.

Rifakes began working for Citizens in its Redding, California location over ten years ago. He transferred to Citizens' newly-established Dallas, Texas office in 1994 and became Director of Human Resources for the office. During his tenure with Citizens, Rifakes received satisfactory or better ratings on all of his performance reviews. In the summer of 1995 Citizens informed Rifakes that his position might be eliminated as a part of a contemplated reorganization. Citizens advised Rifakes that he would still have a job with the company following the reorganization. Nevertheless, Citizens terminated Rifakes' employment in August 1995. Rifakes was 59 years old at the time he was fired.

Citizens informed Rifakes that he was terminated as part of a company-wide reorganization. The reorganization was overseen by Ronald Spears ("Spears"), whom Citizens had recently hired as Vice President of Telecommunications. Spears had been charged with guiding Citizens' transition from a regulated monopoly to a market competitor. Shortly after Citizens hired him, Spears conducted a company-wide tour to examine the operations of Citizens' offices and to solicit employees' ideas and concerns. During a visit to the Dallas office, Spears learned that morale was low and that several employees attributed low morale to employees in the Human Resources Department—namely Ri-

fakes and Brenda Parisotto ("Parisotto").[1] Parisotto held the position of Manager of Employee and Community Relations. Several employees related to Spears that Parisotto and another human resources employee, Tami Rosas ("Rosas"), were in frequent conflict and, consequently, that the Department was not a positive place for employees to bring their concerns. Employees perceived that Rifakes was not actively seeking to correct the problems in the Department. Several employees also informed Spears that they believed Rifakes and Parisotto were involved in a personal relationship that prevented employees from approaching Rifakes with complaints regarding Parisotto. Although Rifakes denies that such a relationship existed, he did not take action to dispel the well-known rumors and suspicions.

Citizens laid off approximately 120 employees in August 1995, of whom about 40 were located in Texas. Rifakes and Parisotto were among those laid off, and their positions were eliminated. Spears stated that there were too many management employees in the Human Resources Department of the Dallas office and that policy making power was being shifted to Citizens' Connecticut headquarters as a part of the reorganization. Spears hired Gary Steele, age 50, to fill a newly-created position in Connecticut. Citizens assigned this individual the responsibility for setting human resources policy for the entire company. Citizens did not offer Rifakes the Connecticut position. Spears made the decision not to hire Rifakes at least in part because of the statement by one of Rifakes' superiors that Rifakes was "out of the traditional school of human resources." Spears Dep. at 33. Rifakes' superiors had told him more than once that he had a 1970's management style and tended to see things in black and white. Spears ultimately decided not to consider any internal applicants for the Connecticut position. According to Rifakes, Spears stated that he had heard that there were some good internal candidates who "were young and could be what [Citizens] needed." Rifakes Aff. at ¶ 19.

Following the reorganization, Citizens retained Rosas as an employee of the Dallas Human Relations Department. For some period of time she was the only management level employee in the Department. Several months after Rifakes' termination, Citizens hired Jan Mitchell, age 47, to fill the position of Manager of Human Resources in the Dallas office. Citizens contends that this position is new, with different responsibilities than the one that Rifakes had held. The position is apparently similar in many respects, however, to Rifakes' former position.

Although 40 Texas employees were terminated during the reorganization, the Dallas office has since increased in size from approximately 300 to 507 employees. Within six to eight months of Rifakes' termination, the Dallas Human Resources Department had the same number of employees as prior to the reorganization.

Rifakes filed the instant action, contending that Citizens unlawfully discriminated against him on the basis of his age. Citizens moves for summary judgment.

## II

### A

A plaintiff may establish a claim of age discrimination through direct or circumstantial evidence. A circumstantial case—like Rifakes attempts to prove here—is established under the familiar burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[2] The plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action taken. The defendant's burden is one of production, not of proof. If

---

**1.** Parisotto also sued Citizens. Judge Kendall filed a judgment on November 6, 1996 dismissing her case.

**2.** The burden-shifting method of *McDonnell Douglas* is only one way, of course, to establish discrimination. *See Smith v. F.W. Morse & Co.*, 76 F.3d 413, 420 (1st Cir.1996); *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir.1996). Because the plaintiff has not adduced any direct evidence of discrimination, however, the court considers the motion under the burden-shifting method.

the defendant meets this production burden, the plaintiff must adduce evidence that would permit a reasonable trier of fact to find that the articulated reason is a pretext for intentional discrimination. *See Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992–93 (5th Cir. 1996) (en banc); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–14, 113 S.Ct. 2742, 2746–51, 125 L.Ed.2d 407 (1993); *Tutton v. Garland Indep. Sch. Dist.*, 733 F.Supp. 1113, 1116 (N.D.Tex.1990) (at summary judgment stage, plaintiff must raise a fact issue).

■ To establish a prima facie case of age discrimination in a termination case, Rifakes must show: (1) that he was discharged; (2) that he was qualified for the position; (3) that he was within the protected class at the time of discharge; and (4) that he was (a) replaced by someone outside the class, (b) replaced by someone younger, or (c) otherwise discharged because of his age. *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir.1993).

### B

■ Assuming *arguendo* that Rifakes has established a prima facie case of age discrimination, the court concludes that Citizens has met its burden of articulating legitimate, nondiscriminatory reasons for terminating Rifakes. Citizens has introduced evidence that it terminated Rifakes because of a company-wide reorganization that resulted in the elimination of Rifakes' position, and based on feedback from employees that Rifakes and Parisotto were the source of low morale in the Dallas office. These are both legitimate, nondiscriminatory reasons. The burden therefore shifts back to Rifakes to adduce evidence that Citizens' reasons are a pretext for intentional discrimination.

### C

Rifakes vigorously disputes whether Citizens actually conducted a reduction-in-force. He maintains that Citizens did not actually implement a reduction-in-force because the size of its Dallas office has grown substantially since his discharge, and the number of employees in the Human Resources Department is essentially the same as what it was prior to his termination.

### 1

■ In some cases, evidence that a proffered nondiscriminatory reason for termination is false, when combined with a prima facie case of discrimination, will permit a jury to infer that the reason was offered as a pretext for intentional discrimination. *See Rhodes*, 75 F.3d at 994. The infirmity with Rifakes' argument, however, is that Citizens maintains that Rifakes was terminated as part of a corporate reorganization, not a "reduction-in-force." These are not the same acts. An increase in the number of employees shortly after significant layoffs is not inconsistent with a legitimate "reorganization." Citizens has adduced substantial evidence that it underwent a significant reorganization at the time of Rifakes' discharge. Citizens terminated in excess of 120 employees. Numerous positions were eliminated, and their responsibilities were reassigned.

The closer question is whether Citizens underwent an actual reorganization of its Human Resources Department. Because the court concludes that summary judgment is still justified on other grounds, the court will assume *arguendo* that Rifakes has presented a genuine and material fact issue whether Citizens' assertion that it terminated him as part of a reorganization of the Human Resources Department is pretextual.

### 2

■ In order to meet his burden, Rifakes must present a genuine issue regarding whether each of Citizens' legitimate, nondiscriminatory reasons is a pretext for discrimination. *See id.* "In some cases ... the fact that one of the nondiscriminatory reasons in the record has proved highly questionable may not be sufficient to cast doubt on the remaining reasons." *Id.* This is such a case.

Citizens contends that one of the reasons it terminated Rifakes was due to low morale in the Human Resources Department and the perception among employees of the Dallas office that he and Parisotto were to blame. This reason for discharging Rifakes is independent of the corporate reorganization rationale. Rifakes has adduced no evidence

that would permit a reasonable trier of fact to find that the explanation is false or otherwise a pretext for age discrimination. His evidence that there may not have been a reorganization of the Human Resources Department does not raise a genuine and material fact issue regarding Citizens' assertion that it terminated him based on low morale.

Citizens has adduced substantial evidence that employees perceived Rifakes and Parisotto to be the primary cause of low morale in the Dallas office. According to the summary judgment record, employees found them to be unresponsive and unapproachable, in part due to the rumored personal relationship between them. *See* Spears Aff. at ¶¶ 4, 10, & 11, Exs. A, B & C. That there may actually have been no such relationship between Rifakes and Parisotto, and that Rifakes generally received satisfactory performance evaluations during his tenure at Citizens, does not alter the analysis. Employers do not violate the ADEA by making incorrect employment decisions. Rifakes has not raised a fact issue whether employees perceived him to be a contributing cause to low morale, or whether Spears believed and felt important the feedback he received from employees. Summary judgment is appropriate for this reason.

### 3

In order to prevail on his claim of age discrimination, Rifakes must also show that the legitimate, nondiscriminatory reasons articulated by Citizens for his discharge are a pretext *for age discrimination,* and not for some other nondiscriminatory reason. *Id.* Here, even if it is accepted that evidence adduced by Rifakes raises a fact issue whether Citizens actually carried out a reduction-in-force, the summary judgment evidence shows, if anything, that Citizens' explanation for Rifakes' termination was a pretext for terminating him because of morale problems and the employee perception that he was involved in a relationship with Parisotto. Rifakes has presented no probative evidence that the purported reorganization was a pretext for age discrimination.

### 4

■ The remarks attributed to Rifakes' superiors—other than Spears—that Rifakes had a "1970's management style" do not constitute evidence of age discrimination because they were made by non-decisionmakers. *See Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 41–42 (5th Cir.1996) (citing *Normand v. Research Inst. of America, Inc.,* 927 F.2d 857, 864 & n. 3 (5th Cir.1991)). The undisputed summary judgment evidence shows that Spears was solely responsible for the decision regarding Rifakes' termination and whether he would be considered for the Connecticut position.

■ Additionally, Spears' alleged comment to Rifakes that there were good internal candidates for the Connecticut position who were "young" and might be what Spears was looking for is not evidence of age discrimination. *Cf. Turner v. North Am. Rubber, Inc.,* 979 F.2d 55, 59 (5th Cir.1992) (comment by supervisor that supervisor was sending the plaintiff "three young tigers" did not relate to *plaintiff's* age and was not probative of age discrimination in plaintiff's termination); *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438–39 (9th Cir.1990) (holding that supervisor's comment that plaintiff's replacement was a "bright, intelligent, knowledgeable young man" did not raise a triable fact issue as to whether employer's articulated nondiscriminatory reason for discharge was a pretext for age discrimination). Construing Rifakes' affidavit favorably, it does not appear that Spears considered the internal candidates to be qualified *because* they were young. *See* Rifakes Aff. at ¶ 19. A reasonable trier of fact could find only that the age-related terminology was descriptive, not indicative of age bias.

■ "[I]f the evidence put forth by the plaintiff to establish a prima facie case and to rebut the employer's reasons is not substantial, a jury cannot reasonably infer discriminatory intent." *Rhodes,* 75 F.3d at 994. Accordingly, the court holds that Citizens is entitled to summary judgment in its favor on Rifakes' ADEA claim.

## III

The TCHRA correlates state and federal law and therefore must be read consistently with federal precedent. *Thompson v. City of Arlington, Tex.,* 838 F.Supp. 1137, 1153 (N.D.Tex.1993) (McBryde, J.); *see Caballero v. Central Power & Light Co.* 858 S.W.2d 359, 361 (Tex.1993) (holding that stated purpose of TCHRA is to coordinate and conform with federal law under Title VII and ADEA). Because the court has granted summary judgment against Rifakes on his federal ADEA claim, the court holds that his TCHRA claim must also be dismissed.

## IV

In its motion, Citizens, out of an "abundance of caution," also addresses any claim for breach of contract that may be stated by the vague allegations of Rifakes' complaint. Rifakes states in his summary judgment response that he waives any breach of contract claim that may have been asserted. P.Resp. at § IV. Accordingly, the court deems any such claim to be withdrawn.

\*   \*   \*

Citizens' motion for summary judgment is granted, and this lawsuit is dismissed by judgment filed today.

**SO ORDERED.**